UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRYSTAL M. on behalf of D.R.,

        Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration

        Defendant.

No. 21 CV 2240

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Crystal M.,[1] on behalf of her son, D.R., appeals the Social Security Commissioner's denial of an application for supplemental security income. Because substantial evidence supports the administrative law judge's decision, I affirm.

## I.  Legal Standards

The Appeals Council declined review, making the ALJ's decision final under the Social Security Act, 42 U.S.C. § 405(g). *See Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021) (citations omitted). Judicial review of Social Security decisions is deferential: I must affirm if the ALJ applied the law correctly and supported her decision with substantial evidence. *See Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "Substantial evidence is not a high threshold." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). It means "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] I refer to plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22. I refer to plaintiff's son by his initials.

conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## II.    Background

In October 2015, Crystal M. applied for supplemental security income benefits on behalf of her son, D.R., alleging disability starting April 8, 2005. R. 276.[2] The Social Security Administration denied her application initially and on reconsideration. R. 181–203. Crystal M. and D.R. appeared at a hearing before an ALJ in October 2018, and four months later the ALJ issued an unfavorable decision, finding that D.R. wasn't disabled during the period in question. R. 132–50.

The ALJ used the agency's three-step process to decide whether D.R. (who was under the age of 18) was disabled. R. 136; *see* 20 C.F.R. § 416.924(a). The process required the ALJ to determine: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the claimant has an impairment or combination of impairments that "meets, medically equals, or functionally equals" one of the agency's listed impairments. 20 C.F.R. § 416.924(a).

The agency lists impairments, with criteria specific to claimants under 18 years old. *See* 20 C.F.R. § 416.925. A claimant's impairments "meet" a listing when they satisfy all of the criteria for a given listing. 20 C.F.R. § 416.925(d).

---

[2] The administrative record, cited as R., can be found at [7-1] and [7-2]. Bracketed numbers refer to entries on the district court docket. Other than in citations to the administrative record (which use page numbers from the bottom of the record), referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Impairments "medically equal" a listing if they are "at least equal in severity and duration" to a listing's criteria, meaning (in the case of the mental disorders at issue here) that a claimant's impairments "result in extreme limitation of one, or marked limitation of two" of four areas of mental functioning. 20 C.F.R. § 416.926(a); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. A "marked" limitation exists when impairments "interfer[e] seriously with your ability to independently initiate, sustain, or complete activities," and are "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i); *see* 20 C.F.R. § 416.925(b)(2)(ii); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. A claimant has an "extreme" limitation when impairments "interfer[e] very seriously with your ability to independently, initiate, sustain, or complete activities," and extreme limitations are "more than marked." 20 C.F.R. § 416.926a(e)(3)(i); *see* 20 C.F.R. § 416.925(b)(2)(ii); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. The four areas of mental functioning (also known as "paragraph B criteria") are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2.

Impairments "functionally equal" a listing if they are of "listing-level severity," meaning that they result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). "Marked" and "extreme" limitations in the functional equivalence analysis mean the same thing as they do in the medical equivalence context, as discussed above. *See* 20 C.F.R §§ 416.926a(e), 416.925(b)(2)(ii). The six domains of functioning are: (1) acquiring and using

3

information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

At steps one and two, the ALJ found that D.R. had not engaged in substantial gainful activity since the application date and had two severe impairments: learning disorder and asthma. R. 138. At step three, the ALJ first considered whether D.R.'s impairments met or medically equaled the severity of a neurodevelopmental disorder, listing 112.11. R. 138.[3] Without expressly analyzing the evidence in this section of her decision, the ALJ found that D.R.'s impairments didn't meet the Paragraph B criteria for a neurodevelopmental disorder, and that therefore D.R.'s impairments didn't meet or medically equal a listed disorder. R. 138.

While still at step three, the ALJ considered whether D.R.'s impairments functionally equaled the severity of a listed disorder. R. 139–50; *see* 20 C.F.R. § 416.926a. The ALJ summarized hearing testimony about D.R.'s learning problems from D.R. and his mother. R. 140. D.R. said that he was pulled out of most of his classes for special education, and Crystal M. said she thought that D.R. was several grade levels behind in reading and math, received accommodations, and was often easily distracted and forgetful. R. 140. The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that statements concerning the intensity, persistence, and limiting

---

[3] The ALJ found (and plaintiff doesn't dispute) that D.R.'s severe asthma impairment didn't meet or medically equal either the children's listing for asthma, 103.03, or the corresponding listing for adults. R. 139.

4

effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 140.

For the first domain—acquiring and using information—the ALJ found that D.R. had a less-than-marked limitation. R. 142–44. A state psychological examiner concluded that D.R. had borderline mental retardation and learning disabilities, with an IQ of 75, but the ALJ discounted that opinion because it was based on a functional assessment applicable to adults. R. 141. A teacher questionnaire showed that D.R. had "very serious" problems in the first two domains, but also that D.R. had less or no problem with some activities. R. 141–42, 402–03. Testing showed that D.R. didn't meet expectations in the fourth, fifth, or sixth grades and scored in just the first percentile in reading and math in 2016–2017. R. 143–44. D.R.'s seventh grade teacher said that D.R. was functioning at a third-grade level in language arts and math, and D.R. received accommodations on an Individualized Education Plan. R. 144.

The ALJ gave only partial weight to the questionnaire and opinions from teachers, a school psychologist, and a school speech language pathologist because she found them inconsistent with the record as a whole. R. 141–42.[4] The record as a whole included the opinions of the non-examining state agency pediatric, psychological and speech pathology consultants, who found that claimant had less-than-marked limitations in the domain of acquiring and using information. R. 141, 144. Agreeing

_____

[4] The ALJ also assigned only partial weight to the questionnaire because D.R. could perform some simple activities without major issues. R. 141–42. It's not clear what simple activities the ALJ was referring to, but it seems likely that she meant the teachers' own assessment that D.R. had no problem or less of a problem carrying out single-step instructions, waiting to take turns, organizing things, and D.R.'s abilities to play sports, read alone, and complete family chores. *See* R. 141, 145, 403.

with that assessment of less-than-marked limitations, the ALJ also noted that D.R. remained in all regular education classes, earned mostly Cs, one D, and one F in seventh grade, and completed extra credit to get his grades up in order to play basketball. R. 144.

The ALJ found a less-than-marked limitation in the second domain (attending and completing tasks) as well. R. 144–45. Crystal M. said that D.R. was easily distracted and couldn't sit still or focus. R. 145. Similarly, D.R.'s fifth grade teachers said that he couldn't focus long enough to finish activities, carry out multi-step instructions, or work without distracting himself or others. R. 145. The ALJ found that D.R. gave up easily on tasks within his capabilities, citing evidence from D.R.'s seventh grade teacher and D.R.'s mother. R. 145. D.R. required extra time to complete assignments and was given a related accommodation in his IEP. R. 145. But the ALJ found that D.R. didn't have a marked limitation in the area of attending and completing tasks because (1) the non-examining state agency's psychological consultants said that D.R. had less-than-marked limitations in this area; (2) the examining consultant said that D.R. could perform simple and routine tasks and follow simple instructions; (3) his fifth grade teachers said D.R. had no problem paying attention when spoken to directly, sustaining attention during play or sports, waiting to take turns, and changing from one activity to another; and (4) D.R. sustained attention well enough to participate in sports, read alone, and complete chores. R. 145.

As to the remaining domains, plaintiff doesn't object to the ALJ's findings that D.R. had no limitation interacting and relating with others, moving about and manipulating objects, and caring for himself. R. 146–49. Plaintiff also doesn't contest the ALJ's finding that D.R. had a less-than-marked limitation in the domain of health and physical well-being. R. 149–50. Because the ALJ concluded that D.R.'s impairments didn't cause marked limitations in two domains or an extreme limitation in one, the ALJ found that D.R.'s impairments didn't functionally equal the severity of a listing. R. 150. The ALJ found that D.R. wasn't disabled as of October 22, 2015, and denied the application. R. 150. The Appeals Council declined plaintiff's request to review the ALJ's decision, R. 1, and plaintiff filed this suit. [1].

## III. Analysis

An ALJ need not address every piece of evidence, but she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citation omitted). In other words, an ALJ must "articulate adequately the bases for [her] conclusions," to demonstrate that she considered key evidence and to permit the court "to trace the path of [her] reasoning." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (citation omitted).

Plaintiff raises two challenges to the ALJ's decision. *See* [12] at 9–15. First, plaintiff argues that the ALJ failed to consider whether D.R.'s impairments met or medically equaled a listed disorder because she didn't consider listing 112.05 (intellectual disorder) at all, and, more generally, because the ALJ engaged in only a perfunctory analysis as to whether D.R.'s impairments met or medically equaled any

7

listed disorder. *Id.* at 9–11. Second, plaintiff contends that the ALJ failed to adequately connect the record evidence with the conclusions that D.R. had less-than-marked limitations in the domains of acquiring and using information and attending and completing tasks. *Id.* at 11–15.

### A. Listing 112.05 and the ALJ's Step Three Analysis

When deciding whether D.R.'s condition "meets or equals a listed impairment" at step three, the ALJ needed to "discuss the listing by name and offer more than a perfunctory analysis." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)); *see* 20 C.F.R. §§ 416.924(d), 416.926. The ALJ wasn't required to discuss all possible listings, just those that could reasonably be a match with the evidence in the record. *See Wilder*, 22 F.4th at 652–53 ("[N]either the SSA's regulations nor the Social Security Act impose an affirmative obligation on ALJ's to scour the Listings for a possible match, no matter how unlikely."); SSR 17-2P, 2017 WL 3928306, at *4 (Mar. 27, 2017) ("If an [ALJ] ... believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment."). Plaintiff had the burden of proving that D.R.'s impairments satisfied the criteria of a listing. *See* 20 C.F.R. § 416.912; *Flener ex. Rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004).

When the agency denied plaintiff's claim originally and on reconsideration, it identified one of D.R.'s impairments as "Borderline Intellectual Functioning" and considered listing 112.05 ("Intellectual disorder"). *See* R. 185, 196. But at the hearing, Crystal M. said that D.R. had a "learning disability." *See* R. 135, 173 (plaintiff didn't have an attorney). At step two of her decision, the ALJ found that D.R.'s impairments were a learning disorder and asthma, and at step three, only identified listing 112.11 ("Neurodevelopmental disorders") as relevant to D.R.'s case. R. 138.

According to the agency's listings, disorders that should be evaluated under listing 112.11 include both "specific learning disorder" and "borderline intellectual functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. Neurodevelopmental disorders are "characterized by onset during" childhood or adolescence and symptoms and signs may include "abnormalities in cognitive processing," "deficits in attention or impulse control," and "difficulty with organizing." *Id*. Listing 112.05 "is characterized by significantly subaverage general intellectual functioning and significant deficits in current adaptive functioning," and examples include "intellectual disability" or "intellectual developmental disorder." *Id*. Examples of disorders considered under listing 112.05 include "major neurocognitive disorder," brain tumor, and brain injury, and the category does not include disorders evaluated under listing 112.11. *Id*.

That the agency had previously considered D.R.'s disability under listing 112.05 and that D.R.'s IQ score was very low[5] should have flagged that category as a

---

[5] D.R.'s IQ score of 75 was not, by itself, enough to show that the functional requirements of listing 112.05 were met. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2. *Lehman v. Colvin*

possibility for the ALJ. But it was plaintiff's responsibility to show that D.R. met the requirements for a listing, and the ALJ identified the correct listing (112.11) for the severe impairment that she found, namely, a learning disorder. *See* R. 138. In reply, plaintiff argues that the ALJ should have identified a separate intellectual disorder, [18] at 3, but that argument is waived. *See White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021) (citations omitted) (arguments raised for the first time in a reply brief are waived because they leave no chance to respond). Even if the ALJ should have analyzed D.R.'s case using listing 112.05, any error was harmless. *See Butler v. Kijakazi*, 4 F.4th 498, 504–05 (7th Cir. 2021) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)) (errors are harmless when a court can "predict with great confidence what the result of remand will be"). Plaintiff doesn't argue that D.R.'s impairments met the criteria of listing 112.05, and the ALJ's analysis of the functional criteria for listing 112.11, discussed below, applies equally to listing 112.05. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2 (meeting the functional criteria for listing 112.05 requires an identical showing as under 112.11: an "extreme limitation of one, or marked limitation of two" of the "four areas of mental functioning").

While the ALJ correctly identified listing 112.11 by name, she also needed to go beyond a perfunctory analysis to explain why D.R.'s impairments didn't meet or medically equal a listed disorder. *See Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir.

---

is distinguishable because claimant didn't offer evidence of a required element for listing 112.05. CAUSE NO. 3:15-CV-00318-MGG, 2017 WL 429472, at *5 (N.D. Ind. Jan. 31, 2017).

2022) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). The ALJ's discussion at this point in her opinion was minimal: she named listing 112.11 and concluded (without analyzing the evidence) that D.R.'s impairments didn't meet the relevant criteria. R. 138. Plaintiff argues that the absence of analysis in this part of the opinion requires remand. [12] at 10–11. But the sequential process for disability evaluation isn't "rigidly compartmentalized," *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (citing *Jeske v. Saul*, 955 F.3d 583 (7th Cir. 2020)), and reading the ALJ's decision as a whole shows that the ALJ analyzed the relevant facts elsewhere in the opinion, as discussed below. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)) ("[I]t is proper to read the ALJ's decision as a whole").

The evaluation process for minors at step three involves overlapping reasoning. Analysis of the four functional or "Paragraph B" criteria used to determine whether impairments medically equal a listing (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself) requires an ALJ to ask largely the same questions about the same body of evidence as consideration of four of the six domains, which are used to decide if impairments functionally equal a listing (acquiring and using information; interacting and relating with others; attending and completing tasks; and caring for yourself). *See Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. App'x 674, 678–79 (7th Cir. 2010) (ALJ's discussion of evidence of a minor's impairments, in parts of opinion separate from analysis of whether a claimant's impairments met or medically equaled

11

a listing, adequately supported the ALJ's conclusion that impairments didn't meet or medically equal a listing); *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (discussing the similar five-step process for adult disability determinations and holding that an ALJ's discussion of a claimant's functional capacities "may doubly explain how the evidence shows that the claimant's impairment is not presumptively disabling under the pertinent listing"); *compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2 (discussing the four "paragraph B" functional criteria for minors) *with* 20 C.F.R. § 416.926a (discussing the six domains of functioning).[6] While it would have made for a clearer ruling, separately analyzing the four criteria and the six domains would also have been redundant. *See Jeske*, 955 F.3d at 590 (quoting *Curvin*, 778 F.3d at 650).

Plaintiff argues that taking the ALJ's discussion of functional equivalence to also explain her reasoning for why D.R.'s impairments didn't meet or medically equal a listed disorder is a post-hoc rationalization. [18] at 3. Review of social security decisions is limited to the ALJ's rationales, and a decision cannot be upheld by giving it new ground to stand on. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Jeske*, 955 F.3d at 587. But reading the ALJ's decision as a whole doesn't provide new or different ground: it merely looks to one part of the ALJ's ruling for the step-three

---

[6] The court in *L.H. ex. rel. T.L.H. v. Colvin*, cited by plaintiff, suggested that these analyses must be separated. No. 1:14-cv-00939-JMS-TAB, 2015 WL 2155687, at *5 n.6 (S.D. Ind. May 7, 2015) (noting that the domains and functional criteria are "not the same" and declining to read an ALJ's analysis at the domain stage as undermining the ALJ's finding as to the Paragraph B criteria, but also noting that the categories may "overlap"). But for a reviewing court to separate the analysis that way would run contrary to the established propositions that an ALJ's opinion must be read as a whole and that the underlying reasoning should not be rigidly compartmentalized. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)); *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (citing *Jeske v. Saul*, 955 F.3d 583 (7th Cir. 2020)).

rationale for review. *See Zellweger*, 984 F.3d at 1254–55 ("[N]othing in *Chenery* prohibits a reviewing court from reviewing an ALJ's [determination at one step in the analysis] in light of elaboration and analysis appearing elsewhere in the decision."); *Jeske*, 955 F.3d at 589–90. And here, the ALJ did conclude that D.R.'s limitations did not medically equal listing 112.11, R. 138; there's nothing post hoc about saying the ALJ did what she said she did.

## B. Substantial Evidence for the Step-Three Conclusion

Whether D.R.'s impairments met, medically equaled, or were functionally equivalent to listing 112.11 depends on the evidence of D.R.'s learning disorder and asthma. *See* 20 C.F.R. §§ 416.924–416.926, 416.926a. The ALJ's discussion of that evidence—located in her analysis of functional equivalence—adequately explained D.R.'s conditions and symptoms. *See* R. 139–50.

In finding that D.R. wasn't limited while interacting with others, the ALJ noted that D.R. played sports, had friends, was caring and respectful according to one teacher, and didn't have problems in the area according to the non-examining state consultants and a teacher questionnaire. R. 147. Similarly, the ALJ concluded that D.R. had no limitation in his ability to care for himself, pointing to a finding by the non-examining state consultants, a lack of evidence about non-typical hygiene problems for a thirteen-year-old boy, and evidence from claimant's teachers that D.R. had no problems taking care of himself. R. 149. Plaintiff doesn't take issue with the ALJ's analysis in these areas (or in the domains of health and physical well-being and moving about and manipulating objects), but does argue that the ALJ failed to

properly evaluate the evidence about D.R.'s abilities to acquire and use information and to attend and complete tasks. [12] at 11–15.

The ALJ found that D.R. had a less-than-marked limitation in the domain of acquiring and using information. R. 142–44. As part of her analysis, the ALJ discussed most of the evidence that plaintiff says supports greater limitations in this area. *See* [12] at 11–12. For instance, the ALJ summarized a questionnaire from D.R.'s fifth grade teachers which showed that D.R. had very serious problems acquiring and using information and attending and completing tasks. R. 141–42, 402–03. The ALJ also noted that D.R. received accommodations on his seventh grade IEP, and that D.R.'s seventh grade teacher said that D.R. was performing at a third-grade level in language arts and math, and needed support in all of his academic classes. *Id.* at 144. The ALJ assigned the questionnaire and reports from D.R.'s teachers partial weight because they weren't consistent with all of the evidence. R. at 141–42.[7]

The ALJ accurately described the entire record of D.R.'s abilities in the area of acquiring and using information, which included substantial evidence that D.R. had less-than-marked limitations. The record showed that (1) D.R.'s articulation, voice, and fluency were average; (2) non-examining consultants concluded that D.R. had less-than-marked limitations;[8] (3) D.R.'s intelligence seemed uneven; (4) D.R.

---

[7] The ALJ also gave the questionnaire only partial weight because evidence showed that D.R. could perform some simple activities in the domain of acquiring and using information. R. at 142; *see* note 4 above.

[8] The ALJ gave partial weight to the state agency consultants' opinions, and said that they were supported by results showing that D.R. scored in the "very low" range on an intelligence test and parts of the teacher questionnaire. R. 141; *see* 20 C.F.R. 404.1527(c); *Grotts v.*

remained in all regular education classes and earned mostly Cs, a D, and an F (in physical education); and (5) D.R. performed extra credit to get his grades up to play basketball. R. 143–44.

The ALJ could have been more explicit about why this evidence outweighed the substantial record of D.R.'s impairments. But the analysis was clear enough. The ALJ identified specific reasons—contrary evidence—that showed why D.R. had a less-than-marked limitation in this area. *See* R. 143–44.[9] By summarizing and discussing how she assigned weight to the evidence that was favorable[10] and unfavorable to plaintiff, the ALJ adequately explained her conclusion. *See* R. 140–44;

---

*Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (an ALJ must minimally articulate her reasoning for crediting non-treating state agency medical opinions). D.R. scored in the "very low" range on "processing speed" and overall I.Q., but was in "low average" range in four other areas assessed by the Wechsler Intelligence Scales for Children-Fifth Edition. R. 397. The questionnaire and the test results supported some limitations in the first domain, as the ALJ and consultants concluded, but they didn't show a marked limitation as a matter of law because the test results alone weren't decisive and it was reasonable to conclude on this record that D.R.'s impairments didn't interfere "seriously" with his ability to "initiate, sustain, or complete" activities. *See* 20 C.F.R. § 416.926a(e)(2)(i), (e)(4)(i) (defining "marked" limitations and explaining that the agency "will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain.").

[9] The ALJ didn't impermissibly rely only on the facts that D.R. attended school or performed adequately in a special education setting. *See* 20 C.F.R. § 416.924a(b)(7)(iv); *Simmons ex rel. L.H. v. Berryhill*, No. 17 C 00065, 2018 WL 1138555, at *4 (N.D. Ill. Mar. 2, 2018). She also based her decision on the assessments by the non-examining state pediatric, psychological, and speech language pathology consultants, who were "highly qualified and experts in Social Security disability evaluation." R. 141, 143; 20 C.F.R. § 404.1513a(b)(1); *see Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).

[10] Plaintiff argues that the ALJ didn't adequately consider evidence that was favorable to D.R., citing the 2015 teacher questionnaire, IEPs, IEP check-ins, and reports from D.R.'s teachers. [12] at 12. But the ALJ discussed most of this evidence, engaged with the records most favorable to D.R., and wasn't required to specifically discuss all of the evidence. *See* R. 140–150; *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

*Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)); *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (citation omitted) (ALJs are prohibited from cherry-picking evidence to support their conclusions).[11]

Plaintiff invites the court to re-weigh the evidence about D.R.'s limitations in the area of attending and completing tasks, but that's not appropriate. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations omitted). As she did in the first domain, the ALJ summarized the relevant evidence, assigned weight to it, and ultimately concluded that D.R. had a less-than-marked limitation in his ability to attend and complete tasks. R. 145. The ALJ discussed Crystal M.'s testimony about D.R.'s inability to focus, and similar reports from D.R.'s fifth and seventh grade teachers. R. 145.[12] The ALJ also noted an opinion from the school's psychologist, who

---

[11] Plaintiff says that substantial evidence supports greater limitations in this area, [12] at 11, but that's not how the test works. *See Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (citations omitted). The court considers whether substantial evidence supports the *ALJ's decision*—not whether substantial evidence existed on which the ALJ could have ruled in claimant's favor. *See id.* This case isn't like *Giles*, where an ALJ made an improper inference from medical evidence and didn't explain why "strong evidence favorable to the plaintiff was overcome," *Giles ex. rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007), because the ALJ here explained that she relied on contrary evidence (including the findings of the non-treating consultants) in making her finding. *See* R. 138–42. The other cases plaintiff cites are also distinguishable, because the ALJ explained why she didn't credit portions of the record favorable to D.R., went beyond mere summary, and adequately engaged with the evidence favorable to claimant. *See* R. 138–42; *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 700 (7th Cir. 2009); *Ralston ex rel. E.M. v. Berryhill*, No. 17 C 7434, 2018 WL 6198462, at *7 (N.D. Ill. Nov. 28, 2018).

[12] Plaintiff objects to the way the ALJ characterized a report from D.R.'s fifth grade teachers, *see* [12] at 13–14, but the ALJ was pulling the language at issue directly from the rating key used by the teachers. *See* R. 403. The ALJ reasonably cited the teachers' evaluations of D.R.'s abilities to "[o]rganize his own things or school materials" (2/5, with 5 being a "Very serious problem") and "[c]arry out single-step instructions" (3/5) as evidence that D.R. had a less-than-marked limitation in the area of attending and completing tasks. R. 145, 403. Plaintiff is right that the ALJ cited one part of the state's examining psychologist's opinion that

said that D.R. required extra time to complete assignments and tests. R. 145. But the ALJ found this evidence outweighed by contrary evidence: (1) D.R.'s teachers said that he had no problem paying attention when spoken to directly, sustaining attention during play and sports, waiting to take turns, and changing from one activity to another without being disruptive; (2) the examining state agency psychological consultant said D.R. could perform simple and routine tasks and follow simple instructions; (3) the non-examining consultants concluded that D.R. didn't have marked limitations; and (4) D.R. was able to focus well enough to play sports, read alone, complete family chores, and was willing to work on his academics when motivated. R. 145.

Agency rules and regulations directed the ALJ to consider how D.R. functioned in all kinds of situations (one-to-one and unfamiliar settings as well as typical and routine situations). *See* 20 C.F.R. § 416.924a(b)(6); SSR 09-4po, 2009 WL 396033, at *3 (Feb. 18, 2009). In contrast to the cases plaintiff cites, the ALJ did that here, relying on evidence about how D.R. functioned at school, during sports and play, when he was alone, and when he was at home. *See* R. 145; *c.f. Simmons ex rel. L.H. v. Berryhill*, No. 17 C 00065, 2018 WL 1138555, at *5 (N.D. Ill. Mar. 2, 2018); *M.W. ex rel. Terry v. Astrue*, No. 10 C 7813, 2012 WL 1532386, at *13 (N.D. Ill. Apr. 30, 2012).

---

supported her decision (a finding that D.R. could perform simple and routine tasks and follow simple instructions), but ignored another part of that opinion that undercut her conclusion (D.R. could not be relied on to retain simple instructions for longer than a day). *See* R. 145, 523. But the ALJ gave "little weight" to the examining consultant's opinion as a whole, *see* R. 141, and in reaching her decision the ALJ relied on other evidence about D.R.'s ability to attend and complete tasks. *See* R. 144–45.

17

Read as a whole, the ALJ's analysis at step three adequately explained why D.R.'s impairments didn't meet, medically equal, or functionally equal a listing. The ALJ's step-three rationale—found in her discussion of functional equivalence—provided the required logical bridge, and substantial evidence supports the ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## IV. Conclusion

Plaintiff's motion for summary judgment, [11], is denied. The ALJ's decision is affirmed. Enter judgment and terminate case.

ENTER:

Manish S. Shah
United States District Judge

Date: May 18, 2022